

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John C. Marburger
County Attorney, Fayette County
LaGrange, Texas

Dear Sir:

Opinion No. O-2110
Re: Compensation of court
interpreters in civil
cases.

Your request for an opinion upon the above stated subject has been received and considered by this Department. To facilitate the detailed presentation of the submitted questions, we quote from your letter as follows:

"I would appreciate your early opinion on the following questions:

"1. What compensation are interpreters entitled to when needed in the trial of a civil case?

"2. Who determines the compensation for such interpreters, the Clerk or Judges of the various courts or the Commissioners' Court of the county?

"3. If interpreters serve in different cases in the same court on the same day, are they entitled to a fee in each case?

"4. Is an interpreter 'employed' from the time he is sworn in by the court until he is discharged, or is he 'employed' only while he is actually interpreting?

"5. Are the Clerks and Judges of the court in which the interpreter is employed authorized to issue warrants payable out of the General Fund or must such interpreters first present a claim to be approved by the County Auditor?"

Article 3712, Revised Civil Statutes of Texas, 1925, provides that:

"The court may, when necessary, appoint interpreters, who may be summoned in the same manner as witnesses, and shall be subject to the same penalties for disobedience. (Acts 1846, p. 363; P. D. 3671)"

Article 2076, Revised Civil Statutes, 1925, provides:

"In each civil suit wherein the services of an interpreter are used, three dollars shall be charged and collected as part of the costs as interpreter's fees, to be paid when collected into the general funds of the county. (Acts 4th C.S. 1918, p. 26)"

Article 2372, Revised Civil Statutes, 1925, as amended by Acts, 1937, 45th Legislature, page 201, Ch. 106, Par. 1, provides as follows:

"The Commissioners Courts of the various counties of this State are hereby authorized to pay for the services of interpreters employed by the various Courts within their respective counties a sum not to exceed Five Dollars ($5) per day, which is to be paid out of the General Funds of the county upon warrants issued by the respective Courts or clerks thereof in favor of the persons rendering such services; provided, however, that such interpreter shall be paid only for the time he is actually employed. Acts 4th C.S. 1918, p. 26: Acts 1937, 45th Leg., p. 201, Ch. 106, § 1."

In 1918, the Fourth Called Session of the Thirty-Fifth Legislature enacted a law which furnished the frame work for all subsequent actions by succeeding legislatures regarding the employment and compensation of court interpreters. The

phraseology and provisions of our current statutory provision, Article 2372, supra, follow in a singular manner the earlier enactment. In their essence, the similitude is marked. It appears that the sole purpose of Article 2372, as amended, is to increase the pay of court interpreters from $3.50 to $5.00 per day. There is no reference made therein as to whether the provisions of the Act should apply to civil or criminal cases or both. This must be determined.

Both the earlier act of 1918 and the subsequent amendatory act of 1937, contained emergency clauses. We refer to this because frequently emergency provisions in statutory enactments afford vital and informative leads towards a sound and proper ascertainment of legislative intent.

A cursory consideration of the 1937 amendatory act would tend to prove that Article 2372, Revised Civil Statutes, 1925, as amended, was designed primarily for application in instances of criminal prosecution necessitating the services of an interpreter. For witness this language used in drafting the emergency clause:

> ". . .the . . . fact that in a great number of counties in this State, it is essential in the prosecution of criminal cases to have competent interpreters to interpret the testimony of witnesses unable to speak or understand the English language, and the further fact that the passage of this law is necessary in the enforcement of the criminal laws of this state, creates an emergency and an imperative public necessity. . ."

Language of the same import was employed in the emergency clause of the original act.

As a further substantiating and supporting fact tending towards the conclusion that Article 2372, as amended, applied to criminal cases only, we observe that there is no express or implied reference to civil cases anywhere in the amendatory act. However, let it be noted, that mention and prevision for civil cases were made in the body of the original Act in 1918 as follows:

> Section 2. "In all civil suits wherein the services of an interpreter is used there shall be charged and collected as part of the costs of the case, as interpreter's fees, the sum of $3.00, which amount when collected shall be paid into the general funds of the county."

The same provision is now incorporated and found in Article 2076, Revised Civil Statutes, 1925, supra.

By this express reference to civil cases and by the provisions made therein for a fund to be raised by assessment of litigants to pay interpreters employed pursuant to such civil litigation, creates the impression that the Legislature intended for the terms of the Act to apply to interpreters, in both civil and criminal cases.

Having determined this, we proceed to an individual treatment of the questions presented to us by you. In doing so, we shall follow the same numerical order of your presentment.

No. 1. An answer of this question necessarily involves the answer to No. 2; therefore, both shall be treated as one.

It seems clear that the judge of a court occupies a position which peculiarly qualifies him to determine what compensation shall be paid to an interpreter for services rendered. In our opinion, the amount of the compensation allowed is within the sound discretion of the court. This contention is further strengthened by the express wording of the Statute which provides that the judge or clerk of a court shall issue a warrant to the interpreter. The exercise of this function necessarily infers, first, an ascertainment of the amount of the warrant to be so drawn or issued. By this, however, we do not intend to expressly or impliedly hold that the clerk of the court has the power of fixing the compensation to be paid the interpreter. In our opinion, it was the intent of the legislature, that the clerk of the court might issue a warrant, but only after receiving an order to that effect from the presiding judge.

Further, in the absence of a definite legislative fixation of a rate of compensation to be paid interpreters, it would appear, that the power of appointment bears with it that secondary power of determining the consideration for the services to be rendered. Article 2372, supra, provides that an interpreter shall be paid a sum ". . .not to exceed Five ($5.00) per day. . .". There is no definite, fixed, or predetermined rate of compensation except that it shall not exceed $5.00. Therefore, the amount to be paid the interpreter is within the discretion of the judge of the court; but in no instance is that compensation to exceed the sum of $5.00 per day. By the terms of the Statute there might be a lesser sum paid, but no greater.

No. 3.   The terms of the statute infer that a per diem basis of compensation is contemplated; therefore, the Interpreter should be paid by the day rather than by the case.

No. 4.   The term "employ" means, in this instance, rendering services, or being in a position to render services, for wages.   By appointment an interpreter is placed in either one of the other of these positions.   Thus, his compensation shall be from that time in which he is required to be in attendance upon the court until the time of his discharge.   This does not necessarily depend upon the day or time of his appointment, because such act is merely an event necessary as a preliminary to the actual rendition of his services, or incidental to his being in a position to render those services.

No. 5.   Article 2372, provides for the payment of interpreters by ". . .warrants issued by the . . . courts or clerks thereof. . ." upon the general fund of the county.   This clearly empowers the court or clerk thereof to issue warrants to pay interpreters.   Such warrants, when signed, attested, and impressed with the seal of the issuing court, in compliance with the terms of Article 1545, Revised Civil Statutes, 1925, represent the interpreter's claim or account against the county. No approval other than his usual examination and verification of all claims, bills, and account against the county is required of the county auditor.   The county auditor's approval in the first instance is not required in order for the interpreter to have a valid claim against the county.

It is true that Article 1661, Revised Civil Statutes; 1925, requires that ". . .All warrants on the county treasurer, except warrants for jury service, must be countersigned by the county auditor."   This should be done.   However, that act constitutes a formality only.   In the case now before us, the act of "countersigning" does not necessarily imply nor require a prior act of 'approval'".

Since Article 2372 supersedes in point of time Article 1643, it is our opinion that the Justice of the Peace Courts are included within the phrase "various courts" of the county; consequently, the judge thereof might issue warrants to pay court interpreters.

"If the exercise of a power granted by a legislative act include going beyond limits fixed by a

prior statute, such limitation is impliedly removed, at least so far as it conflicts with the doing of that which is subsequently authorized." Sutherland on Statutory Construction, Section 145 at p. 195.

Trusting that this satisfactorily answers your questions, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Wm. J. Fanning
Assistant

By /s/ Grundy Williams

GW:ew

APPROVED APR. 16, 1940
Gerald C. Mann
Attorney General of Texas

APPROVED
Opinion Committee
By B. W. B. Chairman